SARAH J. CASADAY, Appellant, v. CHARLOTTE J. BICKFORD et al., Appellees.

**DEEDS:** Nominal Consideration and Marked Mental Impairment. Want of consideration is not, of itself, sufficient ground for setting aside a completed conveyance, but such want of consideration plus the marked mental impairment of the grantor—*of which grantee had full knowledge*—may demand such cancellation.

*Appeal from Washington District Court.*—HENRY SILWOLD, Judge.

JUNE 24, 1918.

SUIT in equity to set aside a deed, it being averred in the petition that such deed was obtained from the plaintiff by defendants by fraud and undue influence and without consideration, and while the plaintiff was in a weakened mental condition. The defense was a general denial, and an averment of adequate consideration received by the plaintiff. There was a decree dismissing the petition, and the plaintiff has appealed.—*Reversed and remanded.*

*Spence & Beard* and *W. M. Keeley,* for appellants.

*Chas. A. Dewey, W. H. Butterfield, H. M. Eicher,* and *C. C. Wilson,* for appellees.

EVANS, J.—The deed in question was executed on October 4, 1915. This suit was begun by the plaintiff as grantor therein on October 24, 1915. Later, there was a substitution of her guardian as plaintiff, and still later, a substitution of her executor. The plaintiff, Sarah J. Casaday, was an unmarried woman. At the time of the execution of the deed, she was 76 years of age. The property conveyed by the deed was her home, which consisted of a house and a half lot situated in the town of Washington, Iowa, and worth from $1,200 to $1,600. She had purchased this home 15 years before, and had lived therein ever since, up to the time of such conveyance. She lived alone. During her active life, her occupation had been that of a housekeeper for a prominent family in Denver, Colorado. Her immediate family consisted of a brother, residing in Ringgold County; two sisters residing in Brighton, Iowa; and one sister residing in Texas. Her means of livelihood consisted of the property in question and $3,700 for which she held the note of her brother. The grantee in the deed complained of was Charlotte J. Bickford. She is the wife of her codefendant, Elmer Bickford. Mrs. Bickford was engaged, to some extent, in the business of renting her rooms to roomers. She lived neighbor to the plaintiff for five years next preceding the date of her conveyance. She was a kind neighbor, and had shown thoughtful consideration for the plaintiff in times of more or less need. In times of sickness, she had carried meals to her. This had occurred on two or three occasions in the last three or four years. These kindnesses were fully appreciated by the recipient. In 1915, the plaintiff had reached a considerable degree of senility. Arterial hardening was marked, and she was afflicted with heart, kidney,

and bladder trouble. In May, 1915, she had an illness which confined her for two or three weeks or more, and which left its impress upon her thereafter. There is practical unanimity in the evidence that there was a noticeable change in her appearance and conduct after that time. Previous thereto, she had been a considerable reader of papers. She had also been interested in church work, and had been a regular attendant upon church services. After her illness, she ceased the reading of the papers, and ceased attendance upon church services. These circumstances of themselves are not greatly significant, but they bear quite importantly upon what followed. On October 1, 1915, while she was away from home and in the business part of the town, she collapsed, and fell unconscious to the sidewalk. She was taken up and revived, but was unable to speak for a half hour or more. She recovered sufficiently to walk to her home, by a little aid from others. On the day following, she recited to her friends her experiences of the evening before. She had become lost in her own home, and was unable to find her own bed. She said she was "turned around," and that she slept on the floor. The next forenoon, she was out in her flower garden, picking flowers for a sick neighbor. She had had no breakfast, and this was supplied by one of the neighbors. On the afternoon of this day, Mrs. Bickford took her to her home, to care for her. This was on Saturday. On Monday, October 4th, the deed in question was executed. A notary came, at the request of Mrs. Bickford, and drew the deed and supervised its execution. The deed recited a "consideration of the sum of five dollars and other valuable considerations, including services rendered in hand paid by Charlotte J. Bickford."

The contention of the plaintiff appellant, generally stated, is that the grantor was in a weakened mental condition, and unable to fully comprehend the nature of her act, and that the grantee knew it; that the conveyance carried

only a nominal consideration; and that the grantee took advantage of the weakened condition of the grantor and her dependence upon the grantee, for the time being, to obtain from her the conveyance, which was essentially improvident.

The contention of appellee concentrates upon two general propositions: (1) That want of consideration is not a ground for setting aside a completed conveyance; (2) that there was a good and sufficient consideration in an undertaking by Mrs. Bickford to care for Miss Casaday for the rest of her life, she having then an expectancy of about five years.

It must be found, upon this record, that there was serious impairment of the mental condition of the original plaintiff, at the time of the execution of such conveyance. Whether the impairment was such as to render her wholly incapable to transact any business at that particular time would be a somewhat different question, which we do not find it necessary to determine. Contracts of persons of impaired mental condition are often sustained, where they are entered into innocently by the other party, and where a fair consideration is found. It is true, as contended by appellees, that want of consideration is not, of itself, a ground for setting aside a completed conveyance. If it were, then even a completed gift would become always subject to revocation. The fact remains that, where marked impairment of mental condition is shown, the question of fair consideration becomes a very important and often controlling circumstance, as bearing on the question of fraud, either actual or constructive. The argument of appellee that an undertaking to care for the grantor for the rest of her life was a good and fair consideration, presents the most plausible ground upon which this conveyance could be sustained. But we are unable to find in the record a word of evidence to sustain it. It does not appear that Mrs. Bickford ever bound herself, either orally or otherwise, to such an undertaking. On the

contrary, it affirmatively appears from the record that her attitude has been a guarded one in that regard, and that she has always refrained from committing herself to such an undertaking. It does not affirmatively appear that there were any negotiations concerning the conveyance in advance thereof. It does not appear that Mrs. Bickford, either before the making of the deed or afterwards, agreed to care for the grantor during life. On the contrary, her attitude at various times quite contradicted such an inference. As noted, the deed recites a completed consideration received. To inquiries made by the relatives of the grantor, at about the time of her departure from the Bickford home, Mrs. Bickford stated that she had paid for the property. In her answer, filed herein during the lifetime of the original plaintiff, she recited the alleged consideration as follows:

"At the time of the execution of said deed and before. and a long time thereafter, the defendants furnished and continued to furnish and provide said Sarah Casaday with care, maintenance, and support, and thereby paid the full consideration for the property; and they have at all times been ready, willing, and able to perform all their obligations in reference thereto, and so informed said Sarah Casaday, and she well knew the same. The contract and arrangement with said Sarah Casaday in reference to matters involved in this suit were her desire and for her best interest, and the plaintiff and those joining with him, and the intervenors and those joining with them in this suit, forcibly, wilfully, and against her will and the will of these defendants, deprived said Sarah Casaday of some of her rights therein. These defendants have made and placed improvements on the property conveyed by said deed, and made the property much more valuable thereby."

If there was, in fact, an existing agreement for the care of the grantor for the period of her life, then the foregoing answer would have to be construed as an intentional evasion

by the defendant from committing herself thereto. Shortly after the grantor left the home of Mrs. Bickford, the latter caused a letter to be written and to be served by the sheriff upon the grantor, which was as follows:

"I desire to carry out my arrangements with you and perform every obligation just as we agreed. Can you not come back and live with me, according to our arrangements? It is not possible for me to come to see you, but I send this to let you know that I have not forgotten you, and am anxious to do what I can for you. (Signed) Mrs. E. A. Bickford."

This was served upon Sarah J. Casaday on November 2, 1915. The foregoing letter implies the existence of an obligation to carry out arrangements, but the defendant did not therein commit herself to any statement of her understanding as to what the arrangement was.

It is to be recognized that, as a witness, Mrs. Bickford would have been under the inhibition of the statute from testifying to personal transactions with a grantor since deceased. She was under no such disability, however, in the framing of her pleading and her letter. Moreover, she testified freely as a witness, in disregard of the statute, without offering any testimony in support of this alleged consideration. The only reference thereto is contained in the last question and answer of her redirect examination, which were as follows:

"Q. Have you, at all times since, been able to comply with your agreement to care for and keep Sarah Casaday? A. Yes, sir, and have at all times since then during her lifetime been willing to do so, if she had come to my house."

As against her, an inference might properly be drawn from the foregoing that she had entered into such an undertaking, but she is not entitled to build her proof of consideration upon evidence quite so scant and vague. It further appears, without dispute, that, after receiving the deed, Mrs.

Bickford took possession of practically all the contents of the house, including the grantor's personal assets. These were the note of the brother and a certificate of deposit. She kept these until after this suit was begun. This conduct indicated that she herself regarded her grantor as not capable, for some reason, to care for the same. It appears, also, that the notary who prepared the deed advised that, in view of the circumstances, witnesses to the same had better be procured. Two witnesses were later procured.

A paving tax had been levied upon the property. Two hundred dollars of this tax was unpaid at the time the deed was executed. This amount was paid by or on behalf of the grantor herself, about the fifteenth of October, while she was at the home of Mrs. Bickford.

We reach the conclusion that it cannot be said, under the pleadings and the evidence, that there was anything more than a nominal consideration for this deed; that, in view of the impaired mental condition of the grantor, and the circumstances under which the deed was obtained, it cannot be sustained as a gift; that the deed was, therefore, clearly an improvident one, and that it was received by the grantee with full knowledge of the impaired mental condition of the grantor. The grantee expended something in repairs and, later, in taxes. She also testified that her care of the grantor for three weeks was worth $10 a week. All this is tendered to her by the plaintiff, and she will be allowed to take the same under the tender. The decree dismissing the petition must be reversed.

In view of the decree below in favor of the defendant, she has doubtless continued in possession. The evidence in the record is sufficient for an accounting, both for rentals received and expenses incurred up to the time of the trial below. The cause will be remanded to the district court for an accounting from such date to the present. The defendant will account for rents received, and she will be entitled to

deduct therefrom appropriate expenditures incurred for taxes and betterments.—*Reversed and remanded.*

PRESTON, C. J., LADD and SALINGER, JJ., concur.